**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

AIDA W. MARQUEZ-RAMOS

    Plaintiff,

           v.

COMMONWEALTH OF PUERTO RICO, et al.

    Defendants.

**Civil No. 11-1547 (SEC)**

**OPINION AND ORDER**

Before the Court are defendants' motion to dismiss (Docket # 29), and plaintiff's opposition thereto (Docket # 37). After reviewing the filings and the applicable law, defendants' motion is **GRANTED in part and DENIED in part.**

**Factual and Procedural Background**

In this federal question action, Aida W. Marquez-Ramos' ("Marquez" or "Plaintiff") brought suit against defendants, her former employer and supervisors, claiming discrimination based on her medical disability and religious beliefs. Seeking pecuniary damages and injunctive relief, she grounds her claims on Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000a-2000e ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1201 et seq., the Rehabilitation Act, 29 U.S.C. § 794(a), as well as other analogous state law statutes.[1]

Because the Court is ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it will relate Marquez's well-pleaded facts as alleged in her amended complaint. Feliciano-Hernandez

---

[1] These are: The Puerto Rico Anti-Discrimination Act ("Law 100"), P.R. Laws Ann. tit. 29, § 146 (prohibiting religious discrimination) and the ADA's local counterpart, Law 44 of July 2, 1995, as amended, 1 L.P.R.A. §§ 501 et seq. ("Law 44").

**CIVIL NO. 11-1547 (SEC)**                                                                Page 2

v. Pereira-Castillo, 663 F.3d 527, 529 (1st Cir. 2011) (citation omitted).  Accordingly, the facts are as follows.

Plaintiff, a practicing Adventist who suffers from Fibromyalgia, is a former employee of co-defendant the Family Department of Puerto Rico's ( the "Family Department") Specialized Investigations Unit (the "Unit). Docket # 24, ¶ 24.[2] The other co-defendants are the Commonwealth of Puerto Rico; Pedro J. Rodriguez-Rosado ("Rodriguez"), the Regional Director of the Unit; the Unit's "Social Work Supervisor II" and plaintiff's immediate supervisor, Veronica Torres-Sanchez ("Torres"); and Alexandri Bernier-Pagan ("Bernier"), the Unit's Associate Director.[3]

Although Marquez had worked for the Family Department since June 2008, what matters is that  she commenced working in April 2009 for the Unit as a "Social Work Supervisor I."

---

[2] Judge Posner once defined fibromyalgia, also known as fibrositis as

> [a] common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. Its cause or causes are unknown, there is no cure, and . . . its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

Sarchet v. Chater, 78 F.3d 305, 306-07 (7th Cir. 1996) (citations omitted); see also Cusson v. Liberty Life Assur. Co., 592 F.3d 215, 218 (1st Cir. 2010) ("Fibromyalgia is characterized by chronic and frequently difficult to manage pain in muscles and soft tissues surrounding joints.") (citations and internal quotation marks omitted).

[3] These invidivual co-defendants are being sued in both their personal and official capacities. Docket # 24, ¶¶ 8-14.

CIVIL NO. 11-1547 (SEC)                                                                                    Page 3

Docket # 24, ¶¶ 23-25. She had not always suffered from fibromyalgia: it was in September 2009 that Marquez was diagnosed with this medical condition. Id., ¶ 26. A few days later, on September 14, 2009, Plaintiff wrote a letter to Rodriguez, requesting reasonable accommodation due to her condition. Id., ¶ 30. According to Marquez's doctor diagnosis, having rotating shifts and periods without rest harmed her health. And, per her physician's recommendation, Marquez requested a fixed shift schedule. Id.

Three days later, Rodriguez wrote back to Marquez and granted her request, establishing a fixed schedule, which, in pertinent part, included Friday and Saturday as her days off. Id., ¶ 31. The complaint states that Torres seemed less than thrilled about Marquez's fixed schedule. For instance, she allegedly stated—in a hostile tone—that Marquez's reasonable accommodations would "aggravate and anger" the Unit's other fellow supervisors. Id., ¶ 32. Nevertheless, during the period that Marquez enjoyed this reasonable accommodation, her health and work performance improved. Id., ¶ 34.

But things soon took an awry turn. At a staff meeting held on November 10, 2009, an "on call" cell phone policy (the "Policy") was instituted. According to the complaint, the Policy obligated Marquez to attend consultations outside of her prescribed work schedule—that is, during Fridays and Saturdays. Id., ¶ 35. Although she initially accepted to follow the Policy, on December 2, 2009, Marquez apparently changed her mind.

In a letter to Rodriguez and Bernier, plaintiff 'informed" them that she could no longer continue abiding by the Policy, because such irregular work schedule "interfered" with her medical treatment and aggravated her condition. Id., ¶ 36. In her December 2, 2009 letter, Marquez also requested that Torres, be "informed again" regarding her reasonable accommodation rights, and that "action must be taken as to [Torres'] hostile attitude" and comments made in connection with her condition and reasonable accommodation request. Id.,

¶ 37. According to the complaint, Torres told Marquez that her reasonable accommodation request "[w]as causing too [many] problem[s]." Id., ¶ 38. Torres allegedly "[w]ould thrust [Marquez] with documents containing her work assignments, as well as yell at [Marquez] in front of [her] subordinates and falsely state that she was lazy or was slacking off work." Id.

The next day, Marquez received a letter from Rodriguez indicating that they were unable to evaluate her "new" request for reasonable accommodation (i.e., being exempted from the Policy on Fridays and Saturdays). Rodriguez also stated that the reasonable accommodation in place (the fixed schedule) was being revoked forthright Id., ¶ 40.

Then, on December 17, 2009, Marquez informed Torres that she was a practicing Seventh Day Adventist. Id., ¶ 58.  As such, she had a religious obligation to abstain from work on Saturdays. She thus requested an accommodation in her work schedule by being allowed to take Saturdays off. Id., ¶ 59. The complaint states that defendants outright ignored and denied her religious accommodation request. Id., ¶¶ 60-62.

In the same time frame, Marquez alleges that she received "numerous reprimands" from defendants for asserting her rights. She specifically points to an instance where, notwithstanding her protestations to Torres that the Policy aggravated her medical condition, Plaintiff received an "insubordination" letter from Torres on December 21, 2009 Id., ¶ 42. Torres' letter censured Marquez's refusal to follow the Policy during the previous weekend. Id. And, without addressing or mentioning Marquez's alleged health concerns with the Policy, Torres stated that Marquez had averred that her noncompliance with the Policy was solely for religious reasons. Id. Another reprimand ensued in May 2010, when both Rodriguez and Torres sent a letter to Plaintiff, scolding her for missing work on the days foreclosed by her religion. Id., ¶ 64. Marquez alleges that these, as well as other verbal reprimands, culminated in a significant deduction of her vacation time and other fringe benefits. Id., ¶¶ 67-68.

Further, the complaint states that the removal of Marquez's fixed schedule "[a]ffected her psychological well being and exacerbated her physical condition," to the point that she suffered a panic attack and was subsequently hospitalized. Id., ¶ 44. She also alleges that the loss of her fixed schedule caused a decrease in her work performance. Ultimately, and because of defendants allegedly continuous discriminatory and retaliatory acts, in January 2011, Marquez was "forced" to resign. On September 22, 2010, she filed a charge before the Equal Employment Opportunity Commission (the "EEOC"). Docket # 8-1, p. 3. A right-to-sue letter was issued on March 14, 2011. Docket # 8-2. And this suit followed four months later. Docket # 1.

On November 28, 2011, defendants moved to dismiss (Docket # 37) Plaintiff's second amended complaint. They raise a myriad of defenses, namely that (1) the Commonwealth of Puerto Rico and the Family Department are entitled to sovereign immunity; (2) her Title VII religious discrimination claim is time barred; (3) there is no individual liability under ADA, Title VII, and Puerto Rico Laws 44 and 100; (4) plaintiff failed to state a plausible retaliation claim under ADA and Title VII; and (5) the individual defendants have qualified immunity. Id.

Marquez opposes every contention. Docket # 37. She also reiterates that defendants violated her rights by discriminating and retaliating against her, and by ignoring her reasonable accommodations requests in connection with her fibromyalgia and religious beliefs.

Although both parties vehemently press the sovereign immunity issue, before addressing this "nonconstitutional but ancient doctrine," Fitzpatrick v. Bitzer, 427 U.S. 445, 457, 96 S. Ct. 2666, 49 L. Ed. 2d 614 (1976) (Brennan, J., concurring), the Court must first ascertain whether Plaintiff's complaint pleads a plausible entitlement for relief. This course of action—bypassing the Eleventh Amendment issue—stems from the First Circuit's recently instituted protocol for deciding sovereign immunity issues arising under Title II of the ADA. See Buchanan v. Maine, 469 F.3d 158, 172 (1st Cir. 2006).

**CIVIL NO. 11-1547 (SEC)**                                                                                    **Page 6**

As a threshold matter, the complaint and the parties' motions do not specify the title of the ADA under which this suit was brought. It most likely arises under Title I, for that is the chapter proscribing employment discrimination in both the private *and public sector*. See 42 U.S.C. §§ 12111-1227; Velazquez-Torruella v. Dep't of Educ., No. 08-1485, 2009 U.S. Dist. LEXIS 30838, at *19. (D.P.R. Apr. 9, 2009) (concluding that ADA discrimination claim against public employer failure to grant reasonable accommodation, fell under Title I). Since the Family Department is evidently a public entity, however, it is plausible that her ADA claim may be also forthcoming under Title II, U.S.C, §§ 12131-12165, which "[a]ddresses discrimination by governmental entities in the operation of public services, programs, and activities, including transportation." Buchanan, 469 F.3d at 170; cf. Diaz-Fonseca, 451 F.3d at 34 ("[W]e have 'assume[d] without deciding that the Department of Education is properly considered the alter ego of the Commonwealth of Puerto Rico for purposes of [E]leventh [A]mendment analysis.'" (quoting Marin-Piazza v. Aponte-Roque, 873 F.2d 432, 437 n. 6 (1st Cir. 1989) (brackets in original)). The First Circuit has recognized but not decided, the disagreement among courts as to whether employment discrimination suits by public employees are cognizable under Title II of the ADA. Currie v. Group Ins. Comm'n, 290 F.3d 1, 6 (1st Cir. 2002) (citing cases evincing split).

This distinction is significant in the sovereign immunity context, see Torres-Alamo v. Puerto Rico, 502 F.3d 20 (1st Cir. 2007); Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001); see also Fitzpatrick, 427 U.S. at 457 (holding that the 1972 amendments to Title VII constituted a valid abrogation of state sovereign immunity). The parties have, as a consequence, overlooked the test set forth in Tennessee v. Lane, 541 U.S. 509, 124 S. Ct. 1978, 158 L. Ed. 2d 820 (2004); City of Boerne v. Flores, 521 U.S. 507, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) (establishing the so-called congruence and

CIVIL NO. 11-1547 (SEC) Page 7

proportionality test). In layman terms, this test determines whether Congress, in light of the facts and legal theories of a particular case, validly abrogated a state's sovereign immunity in a particular federal law.

Further, and given the arresting arguments advanced by plaintiffs—but not rebutted by defendants—with respect to the Commonwealth's alleged lack of constitutional sovereign immunity, the Court will **defer** defendants' constitutional defense for a later stage of the proceedings, e.g., summary judgment.[4] Such crucial issues deserve nothing less than a comprehensive discussion. Accordingly, the court expects the parties' future submissions on this issue to thoroughly address the aforementioned principles.

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008).[5] In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiffs' favor." Bell Atlantic

---

[4] Assuming the highly probable scenario that the Commonwealth and the Family Department's entitlement to sovereign immunity barred most of plaintiff's claims for money damages, her claims for injunctive relief might nevertheless survive. See Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 155-56 (1908); Nieves-Márquez v. Commonwealth of Puerto Rico, 353 F.3d 108, 123 (1st Cir. 2003); see also Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). The same holds true for Marquez's Rehabilitation Act claims. See Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006) ("The Commonwealth defendants do not have Eleventh Amendment immunity against the federal . . . Rehabilitation Act claims, because they waived such immunity by accepting federal funds." (citations omitted)); see also 42 U.S.C. § 2000d-7(a)(1) (conditioning a state's receipt of federal Rehabilitation Act funds to its consent to suit under that statute). Therefore, irrespective of whether defendants are entitled to immunity, some of her claims would endure past the pleadings stage.

[5] Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to allow the defendant *fair notice* of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (emphasis added).

Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Courts "may augment the facts in the complaint by reference to documents annexed to the complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007); see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559. Although complaints do not require detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. at 556.

In Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S. Ct. at 1949-50. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949.

Specifically, the court is not obligated to accept legal conclusions set forth as factual allegations in the complaint. Id.

Moreover, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Id. (citing Twombly, 550 U.S. at 556). Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id. at 1949, 1952. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that "the facts establishing the defense [are] clear 'on the face of the plaintiff's pleadings.'" Blackstone Realty LLC v. FDIC, 244 F.3d 193, 197 (1st Cir.2001) (quoting Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir.1989)).

**Applicable Law and Analysis**

*Invidivual liability under the ADA, Title VII, and the Rehabilitation Act*

Pointing to controversies recently resolved by the First Circuit, defendants argue that there is no individual liability under Title VII and the ADA. Failing to concede, as she must, Plaintiff attempts to lead the Court through the road less traveled, advancing an unavailing argument that, for the reasons set forth below, deserves no consideration. Docket # 37, p. 17.

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The intent behind the ADA is to protect qualified persons with a disability from employment discrimination. Id. § 12112(a). The ADA proscribes discrimination against a qualified individual based on her disability in all employment practices, including, but not limited to job application procedures, hiring, firing, advancement and compensation. Id. It defines "qualified individual with a disability" as [a]n individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8)

As noted above, the First Circuit has "[d]efinitively held that there is no individual liability under Title VII." Rey-Cruz v. Forensic Sci. Inst., 794 F. Supp. 2d 329, 334 (D.P.R. 2011) (citing Fantini v. Salem State Coll., 557 F.3d 22, 31 (1st Cir. 2009)). Inasmuch as Plaintiff argues that Fantini recognized an exception to this absolute rule, she misconstrues this case. Indeed, the Fantini court made no room for such an exception. Accordingly, there is no need to abound on this point. Plaintiff's Title VII religious discrimination claim against the individual defendants in their personal capacity, therefore, is **DISMISSED with prejudice**. The same holds true for Marquez's ADA claim against these defendants. The First Circuit recently extended Fantini to individual liability claims arising under Title I of the ADA. Roman-Oliveras v. Puerto

Rico Elec. Power Auth., 655 F.3d 43, 52 2011(1st Cir. 2011). And an overwhelming consensus in this District dictates that no individual liability exists under Title II either. See e.g., Del-Villar-Rosario v. Puerto Rico Dep't of Justice, 573 F. Supp. 2d 496, 503 (D.P.R. 2008). Consistent with this modern trend, other courts have similarly ruled that "Title II of the ADA does not permit lawsuits against individuals." Sindram v. Merriwether, 506 F. Supp. 2d 7, 11-12 (D.D.C. 2007); see also e.g., Williams v. Hayman, 657 F. Supp. 2d 488, (D.N.J. 2008) (noting that "[n]early every court that has addressed [this] question appears to have held that Title II does not authorize suits against government officers in their individual capacities") (citations omitted; collecting cases). The Court agrees with its sister courts and holds that Marquez's ADA claim (whether cognizable under Title I or Title II) against the individual defendants in their personal capacity fails as a matter of law. As a consequence, such claim is **DISMISSED with prejudice**.

Plaintiff's analogous Rehabilitation Act claim against the invidivual defendants must suffer the same infirmity. See e.g., Garcia v. State Univ. of N.Y. Health Scis. Ctr., 280 F.3d 98, 107 (2d Cir. 2001) (holding that § 504 of the Rehabilitation Act does not provide for individual capacity suits). After all, the ADA's disability discrimination safeguards are modeled on the Rehabilitation Act, which prohibits discrimination by, *inter alia*, a public entity, against disabled individuals under any program or activity that receives federal funding. See 29 U.S.C. § 791 et seq.; see also Oliveras-Sifre v. Puerto Rico Dept. of Health, 214 F.3d 23, 25 (1st Cir. 2000) (refusing to construe an employment discrimination claim separately under the Rehabilitation Act and Title I of the ADA); Tardie v. Rehabilitation Hosp., 168 F.3d 538, 542(1st Cir. 1999) (citing 29 U.S.C. § 794(d)).

In light of the foregoing, and pursuant to plaintiff's own approach (she consolidates both into one count), the Court construes her ADA and Rehabilitation Act claims as one and the same. And there being no individual liability under the analogous ADA, it follows that the individual

defendant cannot be held personally liable under the Rehabilitation Act. E.g., Oliveras Sifre v. Department of Health, 38 F. Supp. 2d 91, 106 (D.P.R. 1999). Hence, plaintiff's Rehabilitation Act claim against the individual defendants in their personal capacity is hereby **DISMISSED with prejudice**.

*ADA discrimination* claim

To establish a claim under the ADA, a plaintiff must show that she (1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability. Ramos-Echevarría v. Pichis, Inc., 659 F.3d 182, 186 (1st Cir. 2011) (citations omitted). In the absence of direct evidence of discrimination, a party must of course rely on circumstantial evidence to establish a *prima facie* case through the burden-shifting framework instituted in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Ramos-Echevarría, 659 F.3d at 182 (citing Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 511 (1st Cir. 1996)).

Defendants concede, at this moment, that Marquez is disabled within the meaning of the ADA, see Docket # 39, p. 10. Instead, they bet the house on the second prong, arguing that Marquez is unqualified to perform the essential functions of her job. Given that defendants have failed to challenge the sufficiency of Marquez's allegations in connection with the other prongs of a Title VII *prima facie* case, the court limits its analysis to the second prong.

Contending that Marquez is unqualified to perform the essential functions of her job, defendants have included an Exhibit: Marquez's Job Description, listing her position's essential duties. Docket # 42-1. They have, however, failed to identify an exception to the general rule that courts may not consider documents unattached to the complaint. This kind of factual determination is better-suited for the summary judgment stage. The same holds true for

defendants' *ipse dixit* that providing Marquez's requested reasonable accommodations would create an undue hardship on its day-to-day operations. These fact-based allegations are not ripe for determination at this juncture, because in resolving a motion to dismiss, the Court evaluates "[t]he plausibility of a legal claim . . . ." Ocasio-Hernandez, F.3d at 12, not the merits of plaintiff's factual defenses. "Although discovery may reveal facts that belie the plaintiffs' claim, that possibility does not negate its plausibility." Id. at 19.[6]

Here, Marquez pleads in her amended complaint that she is "[q]ualified and able to perform the essential functions of her job, with reasonable accommodation." Docket # 24, ¶ 33. This is supported by the fact that, before her resignation, the Family Department had employed Plaintiff for almost two years. See Acevedo v. Potter, No. 08-1468, 2009 U.S. Dist. LEXIS 126588, at *11-12 (D.P.R. Dec. 14, 2009) (citing Banks v. Hit or Miss, Inc., 946 F. Supp. 569 (N.D. Ill. 1996) (finding, in the motion to dismiss context, that plaintiff was qualified since defendant had employed plaintiff for over two years)). In any event, at least one court in this District has found the second prong's basic pleading requirements met, even when the complaint, as in the instant case, is "[s]parse regarding details on what the essential duties of [plaintiff's] position are . . . ." Velazquez-Torruella, U.S. Dist. LEXIS 30838, at *14. Therefore, defendants' motion to dismiss plaintiff's ADA claim is **DENIED**.

*Title VII Discrimination Claim*

Title VII prohibits an employer "to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his . . . religion . . . ." 42 U.S.C. §

---

[6] In the alternative, the Court notes that defendants included the exhibit in question in an unauthorized Supplemental Motion to Dismiss (Docket # 39). But filing such motion without leave of Court "[w]as completely improper." Scelta v. Delicatessen Support Servs., 71 F. Supp. 2d 1222, 1126 (M.D. Fla. 1999).

2000e-2(c)(1). In turn, it defines religion as "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). "Thus, in general terms, Title VII requires employers . . . to accommodate, within reasonable limits, the bona fide religious beliefs and practices of employees." Sanchez-Rodriguez v. AT & T Mobility Puerto Rico, Inc., No. 10–2177, --- F.3d ----, 2012 WL 745282, at *10 (1st Cir. Mar. 8, 2012) (quoting E.E.O.C. v. Unión Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 55 (1st Cir.2004)).

A two-part framework has been adopted for analyzing religious discrimination claims under Title VII. "First, the plaintiff must make [his] prima facie case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Id. (quoting Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004)). "Once the plaintiff has established this prima facie case, the burden shifts to the [employer] to show that it made a reasonable accommodation of the religious practice or show that any accommodation would result in undue hardship." Id. (quoting Unión Independiente, 27 F.3d at 55 (emphasis omitted)).

It is well settled that an employee alleging discrimination under Title VII must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought in federal court. E.g., Abraham v. Woods Hole Oceanographic Institute, 553 F.3d 114, 119 (1st Cir. 2009). A discrimination charge must be filed with the EEOC within 180 days after the alleged unlawful employment practice occurred, or within 300 days when filed with a state agency. 42 U.S.C.A. § 2000e-5(e)(1). The 300 day limit, however, does not apply to "'charges alleging violations of Title VII by agencies or instrumentalities of the Government of Puerto

Rico when they are not operating as private businesses or enterprises.'" Hernandez-Payero v. Puerto Rico, 493 F. Supp. 2d 215, 223 (D.P.R. 2007) (quoting 29 C.F.R. § 1601.74 n. 5). It should go without saying that the Family Department is "[n]ot an agency operating as a private business." Piazza v. Aponte Roque, 909 F.2d 35, 36-37 (1st Cir. 1990).

Defendants advance a statute of limitations defense on this front. This contention is without merit. Marquez filed her Title VII charge with the EEOC on September 22, 2010. Docket #8-1, p. 3. According to defendants' own calculations, "[c]ounting 180 days back in the calendar, takes us to March 27, 2010." Docket # 29, p. 29. But, according to the complaint, in May 2010—not on December 27, 2009, as incorrectly asserted by defendants—Marquez was reprimanded in writing for her absence from work on Saturdays due to the Sabbath services. Hence, the EEOC charge on this front was filed within 180 days of her last alleged unlawful employment practice. Because the facts establishing defendants' statute of limitations defense are not clear "on the face of the plaintiff's pleadings," Aldahonda-Rivera v. Parke Davis & Co., 882 F.2d 590, 591 (1st Cir.1989), the Court need not go further. Defendants have failed to meet their burden at this stage. Therefore, their statute of limitations defense is unavailing.

In the case at hand, moreover, the allegations contained in the complaint easily suffice to configure a *prima facie* case of religious discrimination. Marquez is a Seventh Day Adventist; her abstention from work on Saturdays to observe the Sabbath is a bona fide religious practice. As of December 17, 2009, her employer was aware of the conflict caused by her religious beliefs. According to the complaint, moreover, Marquez suffered an adverse employment action because of this religious conflict: in May 2010, she was reprimanded in writing for her absence from work on Saturdays due to the Sabbath services. See e.g., Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 97 (1st Cir. 2006) (finding that "a document about an alleged disciplinary problem" and an "admonishment letter" were both adverse employment actions) and

Calero-Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 25 (1st Cir. 2004) (finding that a "memorandum of admonishment" constituted an adverse employment action).

Contending that accommodating plaintiff's religious beliefs constitutes an undue hardship, defendants pretend to prove their wholly unsubstantiated factual defenses at the pleadings stage. The Court declines this premature invitation. Defendants, however, may present this defense at the summary judgment stage. Consequently, defendants' motion to dismiss Marquez's Title VII religious discrimination claim is **DENIED**.

*The Retaliation Claim*s

Next, defendants argue that Marquez failed to state a retaliation claim under both the ADA and Title VII.[7] But they fail to cite and consequently apply the correct legal standard and instead merely rehash their premature, factual defense— that granting Marquez's reasonable accommodations requests constituted an undue hardship (see Docket # 29, p. 15). This is but one of the many determinations required by the burden shifting method applicable to retaliation claims under these statutes. See e.g., Sanchez-Rodriguez, WL 745282, at *10 (setting forth correct legal standard for a Title VII retaliation claim); Colón-Fontanez v. Mun. of San Juan, 660 F.3d 17, 36 (1st Cir.2011) (depicting the ADA retaliation claim standard). Beyond this bare assertion, defendants' submission goes no further in support of this asseveration. It is common ground that

> [i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work. . . . Judges are not expected to be mindreaders.

---

[7] The parties have proceeded to discuss the ADA and Title VII retaliations claims jointly. Inasmuch as "[r]etaliation claims are treated the same whether brought under the ADA or Title VII[,]" Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1287 (11th Cir. 1997), the Court will follow suit.

**CIVIL NO. 11-1547 (SEC)**                                                                                              Page 17

> Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.

King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir. 1997) (citations and internal quotations marks omitted). In light of the foregoing deficiencies, the Court refuses to entertain defendants' undeveloped arguments at this time; their motion on this front is thus **DENIED**.

*Law 100 claim*

Defendants also allege that Marquez fails to state a claim under Law 100. Specifically, they aver that Law 100 is inapplicable to (1) the Commonwealth of Puerto Rico; (2) the Family Department; and (3) the individual co-defendants. Marquez does not dispute the first two points, concentrating her rebuttal instead on the third. She argues that individuals are liable under Law 100 irrespectively of whether they are governmental or private employees. Defendants have the winning argument.

The Supreme Court of Puerto Rico has repeatedly held that the cardinal objective of Law 100 "'[w]as to protect employees in the private sector from all types of discrimination although, via exception, the protection covered all employees of government agencies or instrumentalities that operate as private businesses or companies.'" Santini Rivera v. Serv Air, Inc., 1994 P.R.-Eng. 909,527, 137 P.R. Dec. 1, 4 (1994) (emphasis suppressed) (quoting Rodríguez Cruz v. Padilla Ayala, 125 P.R. Dec. 486, 508-09 (1990)). At the time of Law 100's enactment, public employees like Marquez were already protected against discrimination—by the Puerto Rico Constitution. See P.R. Const. art. II, § 1. Law 100, therefore, was the vessel by which the Puerto Rico Legislature extended such protections against discriminations to employees in the private sector. Santini Rivera, 1994 P.R.-Eng. 909, 137 P.R. Dec. at 21 n. 6. Law 100. It necessarily follows that the Commonwealth of Puerto Rico falls short of meeting Law 100's definition of "employer." The foregoing legal principles clearly point out that the Family Department, as a

nonprofit government instrumentality, also falls outside the purview of Law 100. Cf. Alberti v. Univ. of P.R., No. 08-1484, 2011 U.S. Dist. LEXIS 124861, at *76 (D.P.R. Oct. 13, 2011) (citation omitted).

As to the individual defendants' liability, Marquez posits that the individual defendants here should respond, irrespective of whether they are employed by a private employer. In Rosario-Toledo v. Distribuidora Kikuet, Inc., 151 P.R. Dec. 634 (2000), the Supreme Court of Puerto Rico held that Law 100—"[i]mpose[s] civil liability on the agent, official, administrator or supervisor of an employer in [her] personal capacity for the . . . [discriminatory acts] complained of when [she] is the direct author of the conduct in question." Maldonado v. Hosp. Alejandro Otero Lopez, 614 F. Supp. 2d 181, 197 (D.P.R. 2009) (citation omitted). Plaintiff's interpretation of the Rosario ruling—that it applies to supervisors working for entities not covered by Law 100, such as the Family Department—deserves a brief discussion.

As Plaintiff correctly observes, another court in this District has noted that the Rosado holding "[w]as later extended to include not only the actual employer or the owner and the president of the corporation, but also any other person responsible for the illegal conduct, without any distinction." Marrero v. Consorcio Dorado Manati, 552 F. Supp. 2d 157, 171 (D.P.R. 2007) (citing Rosario-Toledo v. Distribuidora Kikuet, Inc., 153 P.R. Dec. 125 (2001) ("Rosario II")). Put differently, that court apparently extended Rosado to all individual defendants. See Torres-Santiago v. Alcaraz-Emmanuelli, 553 F. Supp. 2d 75, 86 (D.P.R. 2008) ("This ruling was not limited to supervisors working for covered entities.") (citations omitted). Defendants have failed to rebut this point.  This court, however, has interpreted Rosario II differently, construing it as extending to any individual responsible (not just supervisors) for the discriminatory conduct, *as long as that person is employed by a covered entity*. See Montalvo-Padilla v. Univ. of Puerto Rico, 492 F. Supp. 2d 36, 46 (D.P.R. 2007); see also

Alberti, LEXIS 124861, at *76-77. To the extent that Marrero and Torres-Santiago are not binding, the Court respectfully declines to follow their holdings.

In sum, Marquez's proffered argument falls short of mandating a departure from this court's previous interpretation of Rosario in Montalvo-Padilla. Accordingly, Marquez's Law 100 claim is **DISMISSED with prejudice as to all defendants.**

*Law 44 claim*

Defendants circumscribe their argument on this front to the inapplicability of Law 44 to the individual defendants. Plaintiff disagrees. She argues that, because the Supreme Court of Puerto Rico held that Law 100 applies to individual defendants in the private sector, this court should construe Law 44 *in pari materia*, thereby holding that it applies to the individual co-defendants. The premise on which this argument rests is correct, but the conclusion that the plaintiff would have this court draw from this premise does not follow. The Court explains briefly.

Law 44 prohibits discrimination in hiring, recruitment, and other terms and conditions of employment at public and private institutions on the basis of a person's disability. P.R. Laws Ann. tit. 1, § 502. Unlike Law 100, however, Law 44 does apply to the Government. See id. § 505. The Puerto Rico Supreme Court, "[h]as yet to rule on the question of individual liability under Law 44." Cardona Roman v. Univ. of P.R., 799 F. Supp. 2d 120, 131 (D.P.R. 2011). But courts in this District—and even the Puerto Rico Court of Appeals—have repeatedly "[h]eld that there is no individual liability under law 44." Id. & n. 10 (collecting cases). The rationale behind refusing to recognize individual liability under Law 44 was tersely explained by Judge Dominguez: "The ADA and Law 44 are almost identical, and as the ADA does not provide for individual liability, neither should Law 44." Id. at 132; see also e.g., Toledo-Colon v.

CIVIL NO. 11-1547 (SEC)                                                                                    Page 20

Commonwealth, 812 F. Supp. 2d 110, 117 (D.P.R. 2011); Vazquez-Vazquez v. Checkpoint Sys. of P.R., Inc., 609 F. Supp. 2d 217, 220 (D.P.R. 2009).

None of Marquez's contrary arguments suffices to overcome the phalanx of cases explicitly refusing to recognize individual liability under this statute. Accordingly, her Law 44 claim against the individual defendants is **DISMISSED with prejudice**.

**Conclusion**

For the reasons stated, defendants' motion to dismiss is **GRANTED in part and DENIED in part**. All of plaintiff's money damages claims against the individual defendants in their personal capacities are **DISMISSED with prejudice**. Her Law 100 claims against all defendants are also **DISMISSED with prejudice.** But Marquez's ADA, Title VII, and Law 44 claims against the Commonwealth co-defendants and the individual defendants in their official capacities are still alive. Similarly, her Rehabilitation Act claims against the Commonwealth co-defendants and the individual defendants in their official capacity also remain pending before this Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of April, 2012.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge